### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

MARK TURNER, on behalf of Himself and
All Others Similarly Situated,

                        Plaintiff,

        vs.

BEST BUY CO., INC.,

                      Defendant.

Index No. CV 08-1024
(Townes, J.)
(Mann, M.J.)

**ECF CASE**

### MEMORANDUM OF LAW IN SUPPORT OF PARTIES' JOINT
### MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT
### AND ALLOCATION AMONG CLASS MEMBERS

{2065 / BRF / 00103689.DOC v1}

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................. 1

PROCEDURAL HISTORY OF THE ACTION ....................................................... 1

    A.    The Litigation .......................................................................................... 1

    B.    The Settlement Agreement ...................................................................... 3

    C.    Preliminary Approval of Settlement ....................................................... 6

    D.    Summary of Claims Process .................................................................... 7

ARGUMENT ........................................................................................................... 8

I.    THE SETTLEMENT SHOULD BE APPROVED .......................................... 8

    A.    The Applicable Standards ....................................................................... 8

    B.    The Settlement is Procedurally Fair ....................................................... 9

    C.    The Settlement is Fair and Reasonable Under the *Grinnell* Factors ..................... 10

        1.    The Complexity, Expense and Delay Support the Settlement ................. 10

        2.    The Stage of Proceedings and the Amount of Discovery Completed .................................................................. 11

        3.    The Risks of Establishing Liability and Damages and Maintaining the Class Through Trial .................................................. 11

        4.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks ........................ 12

        5.    The Ability of the Defendant to Withstand a Greater Judgment ............... 13

        6.    The Reaction of the Class Supports Approval of the Settlement ............. 13

II.    THE ALLOCATION TO THE CLASS MEMBERS SHOULD BE APPROVED ............................................................................... 13

CONCLUSION ...................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Cases**

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) .................................................................................. 8

*Chatelain v. Prudential-Bache Security Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................... 11

*Cinelli v. MCS Claim Services, Inc.*,
236 F.R.D. 118 (E.D.N.Y. 2006) .................................................... 9, 11, 12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................. 11, 13

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................................................................... 8

*In re Global Crossing Security and ERISA Litigation*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................................... 10, 11, 12, 13

*In re Gulf Oil/Cities Service Tender Offer Litigation*,
142 F.R.D. 588 (S.D.N.Y. 1992) ............................................................... 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
94 Civ. 3996 (RWS), 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000)................... 15

*In re Omnivision Tech, Inc.*,
559 F. Supp. 2d at 1036 (N.D. Cal. 2008) ................................................ 15

*In re PaineWebber Ltd. Partnerships Litigation*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ........... 9, 12

*In re Salomon Inc. Secs. Litig.*,
No. 91 Civ. 5442 (RPP), 1994 WL 265917
(S.D.N.Y. June 16, 1994)..................................................................... 9, 11

*In re Sterling Foster & Co., Inc. Secs. Litig.*,
238 F. Supp. 2d 480 (E.D.N.Y. 2002)......................................................... 9

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)...................................................................... 8

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)..................................................................... 12

*Officers for Justice v. Civil Service Commission,*
    688 F.2d 615 (9th Cir. 1982)................................................................. 13

*Wal-Mart Stores, Inc. v. VISA, U.S.A, Inc,*
    396 F.3d 96 (2d Cir. 2005)..................................................................... 9

*Weil v. Long Island Savings Bank, FSB,*
    188 F. Supp. 2d 258 (E.D.N.Y. 2002)............................................ 8, 10, 12, 13

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982).............................................................. 8, 13

## **Statutes**

New York Labor Law 190, *et seq.* and 650, *et seq.* ........................................ 2

12 NYCRR 142-2.1 and 142-2.2.43............................................................... 2

Class Action Fairness Act of 2005 .............................................................. 2

Plaintiff Mark Turner and Defendant Best Buy Co., Inc. ("Best Buy") (hereafter collectively referred to as "the Parties") hereby jointly move and respectfully submit this memorandum of law in support of The Parties' Motion for Final Approval of Proposed Settlement and Allocation Among Class Members.

## PRELIMINARY STATEMENT

The Parties respectfully submit that the Settlement in the instant action is fair, adequate and reasonable and provides adequate redress of Plaintiff's claims against Best Buy arising from Plaintiff's allegations that Best Buy failed to adequately compensate Plaintiff for time worked in Best Buy's retail stores. The Parties also submit that the Plan of Allocation among members of the Settlement Class described herein is fair and reasonable and should be finally approved.

By his separate Plaintiff's Motion for Award of Attorneys' Fees and Expenses and Enhancement Award for Class Representative, Plaintiff has moved for an award of Class Counsel's fees and expenses amounting to $150,000 and a $5,000 enhancement award for the Class Representative. Best Buy does not oppose Plaintiff's Motion for Award of Attorneys' Fees and Expenses and Enhancement Award for Class Representative, and has in the Joint Stipulation and Settlement Agreement (Dkt. No. 39, ex. 1) agreed to separately pay the $150,000 in fees and expenses and $5,000 enhancement award, and thus any alteration by the Court of such amount, would not affect the amounts to be paid to current and former employees under the Settlement.

## PROCEDURAL HISTORY OF THE ACTION

**A.      The Litigation**

On January 23, 2008, Mark Turner (the "Class Representative") commenced a putative class action against Best Buy Co., Inc. ("Best Buy" or "Defendant") in the Supreme Court of the

State of New York, County of Kings.  The case was removed to the United States District Court for the Eastern District of New York pursuant to the Class Action Fairness Act of 2005.

The Class Representative was an hourly wage employee who worked closing shifts at Best Buy stores in New York during a period beginning November 1, 2001 and ending November 3, 2009 (the "Class Period").  The Class Representative alleges that he and all Class members were required to "clock out" before going through mandatory security inspections that took place before they could leave the store for the day.  Therefore, the Class Representative alleged they were not paid for the time spent waiting and going through such security inspections.  In the Litigation, the Class Representative alleged that he and the Class members (i) were not paid the required minimum wage compensation for all of the time they worked, (ii) were not paid the required wage compensation for overtime they worked, and/or (iii) were not paid all wages that were due to them.  Specifically, Plaintiff asserted that Best Buy violated the New York Labor Law, 190 *et. seq*. and 650 *et seq*. and 12 NYCRR 142-2.1 and 142-2.2.43, and also asserted New York common law claims against Best Buy for breach of contract and unjust enrichment.  The complaint asserts, *inter alia*, claims for alleged unpaid wages, unpaid minimum wages, unpaid overtime compensation, and for interest, liquidated damages, punitive damages, penalties, restitution, attorneys' fees and litigation costs under applicable New York wage and hour laws.

The Parties engaged in discovery through production and review of documents and other materials and the testimony of witnesses at depositions, in this and a similar case prosecuted by the same counsel in the Eastern District of Pennsylvania.[1]  The Class Representative produced all documents and materials relating to employment that remained in his custody or control.  Best

---

[1]  The Pennsylvania action has been settled on similar terms, the settlement has been preliminarily approved, and a Final Approval Hearing is scheduled for October 23, 2010.

Buy produced both paper documents and materials such as manuals and policies, video and electronic data relating to the time keeping of its employees. In addition, Best Buy corporate representatives testified at depositions.

The Parties in this Litigation disagreed as to the probable outcome of the Litigation if it were not settled.  While the Class Representative and Best Buy each believed their positions would be vindicated at trial, the Class Representative recognized that litigating is a risky proposition and that he may not have prevailed on any or all of his claims, and Best Buy also recognized the benefits of settlement in lieu of the risks, distractions, and costs involved with litigation.

**B.      The Settlement Agreement**

On November 3, 2009, after exchanges of information, and months of negotiations through counsel experienced in these types of cases, the Settling Parties entered into the Joint Stipulation and Settlement Agreement, dated November 3, 2009 (the "Settlement Agreement").

The Settlement Agreement provides the following relief for Class members, all subject to final approval by the Court:

1.      Best Buy has agreed to pay up to $747,410.50 to resolve Class members' claims, plus $5,000 to the Class Representative and $150,000 for the Class Counsel's fees and expenses, for a total commitment of $902,410.50.

2.      The gross settlement fund would be allocated among Class members as follows: (a) up to $274,280.00 for all Class members who are current employees and who properly submit a timely Consent to Join Settlement and Claim Certification Form, and (b) up to $473,130.50 for all Class members who are former employees and who properly submit a timely Consent to Join Settlement and Claim Certification Form.

3.      Best Buy will make a settlement payment to each Class member who properly submits a timely Consent to Join Settlement and Claim Certification Form according to a formula which is based on, *inter alia*, whether the Class member is a current or former employee as of the date of the execution of the Parties' Settlement Agreement, the number of Class members participating in the Settlement, and the number of closing shifts each Class member worked. The details of this formula are in the Class Notice, which is attached as Exhibit 1 to the August 27, 2010 Declaration of Gerald Lawrence ("Lawrence Decl.").

4.      Subject to the provisions described in paragraphs 5 and 6 below, Class members who properly submit timely Consent to Join Settlement and Claim Certification Forms will receive additional wages in an amount equal to $0.50 for each closing shift they worked while employed by Best Buy during the Class Period. For example, if a participating Class member worked 200 closing shifts during the Class Period, he or she would receive $100 in additional wages under the Settlement. Any payment made pursuant to this Settlement to a Participating Claimant will be subject to required wage holdings and deductions; therefore, the net payable amount will be less than the gross amount of the settlement sum. Any Class member who properly submitted a timely Consent to Join Settlement and Claim Certification Form but worked fewer than five (5) closing shifts, shall be treated as if he/she worked five (5) closing shifts for purposes of this Settlement. The actual number of closing shifts credited to each Class member is based upon Best Buy's records and was stated in the Consent to Join Settlement and Claim Certification Form sent to each Class member with the Class Notice.

5.      In the event that this Settlement payment formula would result in a cumulative total settlement amount greater than $274,280.00 for current employees, each current employee who properly submits a timely Consent to Join Settlement and Claim Certification Form would

then share in the fund's monies on a *pro rata* basis accounting for the number of closing shifts each worked during the Class Period.

6.      In the event that this Settlement payment formula would result in a cumulative total settlement amount greater than $473,130.50 for former employees, each former employee who properly submits a timely Consent to Join Settlement and Claim Certification Form would then share in the fund's monies on a *pro rata* basis accounting for the number of closing shifts each worked during the Class Period.

7.      In addition to the monetary relief set forth above, there is prospective non-monetary relief for Best Buy employees that will assure they are paid for all time they are required to spend at a store.  Best Buy has modified its Standard Operating Procedure Manual to include language substantially similar to the following and agrees to retain this language for no less than two (2) years:

> "Only Managers, Key-Holding Supervisors, or Inventory/LP Team Members are authorized to unlock the front doors for exiting employees when the store is closed. Observe the following:
>
> Employees must wait for the Manager, Key-Holding Supervisor, or Inventory/LP Team Member at the Loss Prevention desk.
>
> Employees must remain punched in until the Manager, Key-Holding Supervisor, or Inventory/LP Team Member is available.
> **Note:** At no time should an employee punch out and wait to be let out of the store. All employee-waiting time must be on the clock."

8.      Defendant will pay the Class Representative $5,000.00, as an individual enhancement, less applicable payroll tax withholding, subject to approval by the Court.

9.      Defendant will pay up to $150,000 to Class Counsel for attorneys' fees and litigation costs, subject to approval by the Court.  These fees would be paid separately by Best

Buy and any alteration by the Court of such amount would not affect the amounts ($274,280 and 473,130.50) to be paid to current and former employees under the Settlement.

10.     Best Buy has agreed to pay the fees and expenses incurred by the claims administrator.

## C.     Preliminary Approval of Settlement

On February 5, 2010 Class Representative submitted his Application for Preliminary Approval of Class Action Settlement, Certification of Settlement Class, Approval of Claims Administrator and Publication of Notice.  Dkt. Nos. 38-40.  On March 11, 2010, the Court issued an Order granting preliminary approval, and on March 31, 2010, the Court issued an Amended Scheduling Order.  On May 5, 2010, following an unopposed motion by Best Buy to revise the pending Orders, the Court entered the operative Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order").  Dkt. No. 44.  The Court designated Plaintiff Mark Turner as Class Representative and designated the law firms of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg"), Kenney Egan McCafferty & Young, P.C. and Caldwell Law Office LLC as "Class Counsel."  Lowey Dannenberg was appointed as Lead Class Counsel.

Additionally, the Court approved the Garden City Group ("GCG") as Claims Administrator and authorized that notice, in the form as attached to Exhibit 1 to the Settlement Agreement (Dkt. No. 39-1), be sent to the Settlement Class defined as:  All individuals who were employed by Best Buy in a non-exempt position at a retail store in New York at least one day from November 1, 2001 until November 3, 2009.

**D.**     **Summary of Claims Process**

Beginning on June 4, 2010, GCG mailed Notices, Consent to Join Settlement and Claim Certification Forms and Exclusion Forms via first-class mail, postage pre-paid to 28,009 Class members using last known addresses provided by Best Buy.  Lawrence Decl. ¶ 3.

The Class Notice provided detailed information concerning: (a) the rights of Class members, including the manner in which objections or exclusions could be lodged; (b) the nature, history and progress of the litigation; (c) the proposed settlement and reasons therefore; (d) the process for filing Consent to Join Settlement and Claim Certification Forms; (e) a description of the settlement payment formula; (f) the fees and expenses to be sought by Class Counsel (g) the date, time and place of the Final Approval Hearing to take place before this Court; (h) the necessary information for the examination of the Court record should any Class member elect to do so; and (i) the identification of counsel to contact with questions regarding the Settlement.  *See* Ex. 1 to Lawrence Decl.

GCG also established a toll-free number to further assist Class members in obtaining additional information to understand their rights with respect to the Settlement, including the right to object or opt-out of the litigation, or to file a proof of claim.  The Notice and Joint Stipulation and Settlement Agreement were available on GCG's website.  Class members were given until September 2, 2010 to mail the Consent to Join Settlement and Claim Certification Form.

The Class Notice advised Class members of the September 2, 2010 deadline for filing exclusions from the Settlement and the August 30, 2010 deadline for filing objections to the Settlement.  *See* Ex. 1 to Lawrence Decl.  As those deadlines approach, as of August 22, 2010, no objections have been filed and 40 requests for exclusion have been submitted.  Lawrence

Decl. ¶ 4. As of August 22, 2010, the Claims Administrator has received over 2500 Consent to Join Settlement and Claim Certification Forms. *Id.* A final report of the Claims Administration will be filed prior to the preliminary approval hearing on September 13, 2010. *Id.* ¶ 2.

The Class Representative and Class Counsel believe that the $902,410.50 Settlement (including attorneys' fees/expenses and Class Representative enhancement award) is an excellent result given the immediate financial benefit for the Class and the significant litigation risks involved if the Action against Defendant is not compromised.

## ARGUMENT

## I. THE SETTLEMENT SHOULD BE APPROVED

### A. <u>The Applicable Standards</u>

Rule 23(e) of the Fed. R. Civ. P. requires court approval of a class action. The district court must determine whether the settlement is "fair, adequate and reasonable, and not a product of collusion." *Weil v. Long Island Savings Bank, FSB*, 188 F. Supp. 2d 258, 262 (E.D.N.Y. 2002) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001), and *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

As a matter of public policy, the courts favor the settlement of lawsuits. *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). In considering the fairness of a settlement, courts must determine whether the settlement is both procedurally fair and substantively fair. This inquiry involves an examination of whether the settlement was the product of arm's length negotiations and class counsel possessed the experience and ability, and engaged in the discovery necessary to effectively represent the class's interests. *Weil v. Long Island Savings Bank, FSB*, 188 F. Supp. 2d at 262 (quoting *Weinberger v. Kendrick*, 698 F.2d at 74); *D'Amato v. Deutsche Bank*, 236 F.3d at 85. A

strong presumption of fairness attaches to settlements that have been negotiated at arm's length

because the courts are hesitant to second-guess the business judgment of experienced and

informed counsel. *In re Sterling Foster & Co., Inc. Secs. Litig.*, 238 F. Supp. 2d 480, 484

(E.D.N.Y. 2002).

The substantive fairness of a proposed settlement involves an inquiry into nine factors

(the "*Grinnell* factors") that courts should review:

> (1) the complexity, expense and likely duration of the litigation,
> (2) the reaction of the class to the settlement, (3) the stage of the
> proceedings and the amount of discovery completed, (4) the risks
> of establishing liability, (5) the risks of establishing damages,
> (6) the risks of maintaining the class action through the trial,
> (7) the ability of the defendants to withstand a greater judgment,
> (8) the range of reasonableness of the settlement fund in light of
> the best possible recovery, [and] (9) the range of reasonableness of
> the settlement fund ... in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. VISA, U.S.A, Inc*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *see also*, *Cinelli v. MCS Claim*

*Services, Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006). As shown below, the Settlement satisfies

these factors and is procedurally fair.

**B.     The Settlement is Procedurally Fair**

In reviewing a settlement, courts examine the "negotiating process by which the

settlement was reached," *Weinberger*, 698 F.2d at 74, including the stage of the proceedings and

the amount of discovery completed. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D.

104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). At the time the Settlement was

reached, Class Counsel had almost completed fact discovery, and could thoroughly evaluate the

strengths and weaknesses of Plaintiff's claims. Numerous Best Buy employees, former

employees and corporate designees were deposed; the company's policies, procedures,

handbooks, and documentation were produced and reviewed, as were employment records, data about wages, hours and the number of shifts worked. This substantial discovery provides a sound basis for counsel to evaluate the merits of the case. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591 (S.D.N.Y. 1992); *In re Salomon Inc. Secs. Litig.*, No. 91 Civ. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994) ("The amount of discovery completed prior to settlement gives assurance to the Court that the counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them and the risks of maintaining the class action through trial").

Beginning in the early spring of 2009, Plaintiff's counsel and counsel for Best Buy began discussing how to resolve these claims. It was agreed to use a formula of 50 cents per closing shift worked to approximate the amount of allegedly lost wages for each shift worked based upon an average wage. In sum, "[b]ecause the parties engaged in arm's length negotiations, and because Class counsel was amply skilled and fully informed by adequate discovery, the Settlement is procedurally fair." *Weil*, 188 F. Supp. 2d at 263. *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).

C.   **The Settlement is Fair and Reasonable Under the *Grinnell* Factors**

1.   **The Complexity, Expense and Delay Support the Settlement**

Litigating the action through trial would be complicated and expensive. The Class was not certified and additional discovery would be sought. In addition, experts would have to be retained to create models meeting the standard for admissibility and use at trial. The parties would have to fight over class certification. Substantial efforts would then be devoted to summary judgment briefing and the pre-trial order and *in limine* motions. Best Buy could be expected to litigate these matters vigorously. If the Class were certified and Plaintiff's claims

survived for trial, Plaintiff would have to spend much time and money developing fact and expert testimony.

The Settlement should be approved because it affords recovery to the Class *now*, rather than a wholly speculative payment years from now. *Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992).

### 2. The Stage of Proceedings and The Amount of Discovery Completed

The stage of the proceeding and amount of discovery support a finding that the Settlement is fair. This factor is directed towards determining "whether the parties had ample information to make informed decisions as to the terms of the Stipulation of Settlement." *Cinelli v. MCS Claims Servs., Inc.*, 236 F.R.D. 118 (E.D.N.Y. 2006) (finding that this factor was satisfied based on "representations made by counsel at the Fairness Hearing" that the parties "entered into settlement negotiations with ample information as to what a trial would entail"). During the course of discovery in this action and the companion Pennsylvania action, present and former Best Buy employees were deposed, as were corporate representatives of Best Buy. In addition, time records, policies and procedures were produced and reviewed.

Armed with this record, Plaintiff and his counsel were fully aware of the strengths and weaknesses of the case, and "weighed their position based on a full consideration of the possibilities facing them and the risks of maintaining the class action through trial." *In re Salomon Inc. Secs. Litig.*, 1994 WL 265917, at *13; *Global Crossing*, 225 F.R.D. at 459.

### 3. The Risks of Establishing Liability and Damages and Maintaining the Class Through Trial

A major consideration for the Court is to balance the risks of establishing liability and damages against the benefits afforded by the settlement. *City of Detroit v. Grinnell Corp.*, 495

F.2d 448, 463 (2d Cir. 1974). In analyzing the parties' risk of establishing liability, the Court need not "'decide the merits of the case or resolve unsettled legal questions.'" *Cinelli*, 236 F.R.D. at 121 (citation omitted). Instead the Court must weigh the likelihood of success by the plaintiffs against the relief offered by the settlement. *Id.* at 122. Here, Plaintiff will have to overcome difficult issues in establishing causation. Courts routinely approve settlements where plaintiff would have faced significant legal and factual obstacles in proving his case. *Global Crossing*, 225 F.R.D. at 457. Such risks abound here. As this Court has recognized: "It is axiomatic that anything can happen at trial." *Weil*, 188 F. Supp. 2d at 264. Accordingly, the risks involved in recovering on both liability and damages weigh in favor of compromise.

The risks of maintaining the Class Action through trial include not surviving a motion for summary judgment, a class not being certified, and a potential for loss at trial. Therefore, these factors weigh in favor of settlement.

### 4. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks

Courts are required to analyze a settlement's fairness by comparing the terms of the settlement with the likely rewards of litigation. *In re PaineWebber Ltd. P'ships, Litig.*, 171 F.R.D at 129. The courts are in agreement that determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *See, e.g., Id.* at 130. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the Settlement provides for the establishment of a Settlement Fund of up to $747,410.50 to resolve Class members' claims, which represents approximately $0.50 per eligible employee shift. Given the average wage and the amount of allegedly uncompensated time per shift, this is fair and reasonable.

Thus, under any rationale, this settlement is excellent and clearly falls within the range of reasonableness. *See Grinnell*, 495 F.2d at 463; *Weinberger*, 698 F.2d at 73.

### 5.   The Ability of the Defendant to Withstand a Greater Judgment

With operations in the United States, Canada, Europe, China and Mexico, Best Buy is a multinational retailer of technology and entertainment products and services. The Best Buy family of brands and partnerships collectively generates more than $45 billion in annual revenue. This factor is therefore neutral regarding settlement.

### 6.   The Reaction of the Class Supports Approval of the Settlement

Another important factor used to determine whether a settlement should be approved is the response of members of the class. *Grinnell*, 495 F.2d at 462; *Weil*, 188 F. Supp. 2d at 263; *Global Crossing*, 225 F.R.D. at 457. The Class Notice provides detailed information concerning the rights of Class members, including notice of their right to object to the terms of the proposed Settlement. To date, there have been no objections to either the Settlement or the fee and expense request. This fact substantially supports approval of the Settlement.


## II.   THE ALLOCATION TO CLASS MEMBERS SHOULD BE APPROVED

The Parties also request that the Court approve the method of allocating payment to the Class members as "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted). The Settlement Agreement provides that the gross settlement fund would be allocated among Class members as follows: (a) up to $274,280.00 for all Class members who are current employees and who properly submit a timely Consent to Join Settlement and Claim Certification Form, and (b) up to $473,130.50 for all Class

members who are former employees and who properly submit a timely Consent to Join Settlement and Claim Certification Form.

Class members who properly submit timely Consent to Join Settlement and Claim Certification Forms would receive additional wages in an amount equal to $0.50 for each closing shift they worked while employed by Best Buy during the Class Period. For example, if a participating Class member worked 200 closing shifts during the Class Period, he or she would receive $100 in additional wages under the settlement. Any payment made pursuant to this Settlement to a Participating Claimant will be subject to required wage holdings and deductions; therefore, the net payable amount will be less than the gross amount of the settlement sum. Any Class member who properly submits a timely Consent to Join Settlement and Claim Certification Form but worked fewer than five (5) closing shifts, shall be treated as if he/she worked five (5) closing shifts for purposes of this settlement. The actual number of closing shifts credited to each Class member will be based upon Best Buy's records and will be stated in the Consent to Join Settlement and Claim Certification Form sent to that Class member with the Class Notice.

In the now believed to be unlikely event that this settlement payment formula would result in a cumulative total settlement amount greater than $274,280 for current employees, each current employee who properly submits a timely Consent to Join Settlement and Claim Certification Form would then share in the fund's monies on a *pro rata* basis accounting for the number of closing shifts each worked during the Class Period. In the now similarly believed to be unlikely event that this settlement payment formula would result in a cumulative total settlement amount greater than $473,130.50 for former employees, each former employee who properly submits a timely Consent to Join Settlement and Claim Certification Form would then share in the fund's monies on a *pro rata* basis accounting for the number of closing shifts each

worked during the Class Period.  Based on the most recent status of activity provided by the Claims Administrator, and the short amount of time left in the claims period, these contingencies are unlikely, as it is fully expected that Class members who properly submit timely Consent to Join Settlement and Claim Certification Forms would receive additional wages in an amount equal to $0.50 for each closing shift they worked while employed by Best Buy during the Class Period.  A full report will be submitted by the time of the final approval hearing on September 13, 2010.

A "plan of allocation of settlement proceeds in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Tech, Inc.,* 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (internal quotations omitted).  In making this determination, courts have given great weight in determining the fairness, reasonableness and adequacy of a proposed plan of allocation to the opinion of class counsel. *See In re NASDAQ Market-Makers Antitrust Litig.*, 94 Civ. 3996 (RWS), 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel").

The Parties have negotiated at arm's length over several months to hammer out the terms of the Settlement Agreement.  Based on those back and forth discussions and Class Counsel's experience in class action litigations, Class Counsel have determined that the method for allocating payment to Class members is "fair, reasonable and adequate."

## CONCLUSION

For the foregoing reasons, The Parties' Motion for Final Approval of Proposed Settlement and Allocation Among Class Members should be granted and the Court enter an order similar to the proposed order attached hereto as Exhibit A.

DATED: August 27, 2010

Respectfully submitted,

LOWEY DANNENBERG COHEN & HART, P.C.

By:    /s/ Gerald Lawrence
      Gerald Lawrence (GL-9943)
      Jeanne F. D'Esposito (JD-5843)
      One North Broadway, Suite 509
      White Plains, NY 10601
      Phone:  (914) 997-0500
      Fax:    (914) 997-0035
      glawrence@lowey.com

      Eric L. Young
      Egan Young, Attorneys-at-Law
      526 Township Line Road, Suite 100
      Blue Bell, PA  19422
      Phone: (215) 367-5151
      eyoung@eganyoung.com

      Ann M. Caldwell.
      CALDWELL LAW OFFICE LLC
      108 W. Willow Grove Avenue
      Suite 300
      Philadelphia, PA 19118
      Phone: 215-248-2030
      acaldwell@classactlaw.com

***Attorneys for Plaintiff***


MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Christopher A. Parlo
      Christopher A. Parlo
      101 Park Avenue
      New York, New York 10178
      Phone:  (212) 309-6000
      Fax:    (212)309-6001
      cparlo@morganlewis.com

      Paul C. Evans
      Sean W. Sloan
      1701 Market Street
      Philadelphia, PA 19103-2921
      Phone: (215).963- 5000
      Fax:    (215) 963-5001
      pevans@morganlewis.com
      ssloan@morganlewis.com

***Attorneys for Defendant***